NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. EC-12-1419-DJuMk |
| | ) | |
| MICHAEL TRENT SHOWALTER, | ) | Bk. No. 12-22720 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL TRENT SHOWALTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[1] |
| | ) | |
| J. MICHAEL HOPPER, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on March 22, 2013
at Sacramento, California

Filed - April 11, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Michael S. McManus, Bankruptcy Judge, Presiding

---

Appearances:     Albert M. Kun, Esq., argued for Appellant Michael Trent Showalter; J. Luke Hendrix, Esq., argued for Appellee J. Michael Hopper, Trustee.

---

Before:  DUNN, JURY, and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The debtor Michael T. Showalter ("Debtor") appeals the bankruptcy court's order sustaining the chapter 7[2] trustee's ("Trustee") objection to the Debtor's homestead exemption claim in an undivided one-third interest in a single-family residence property located in Lecanto, Florida (the "Florida Property") pursuant to California Code of Civil Procedure ("C.C.P.") § 704.920. We AFFIRM.

**FACTS**

There is no material dispute between the parties as to the factual record in this appeal. Where they differ is in the implications from the facts in the record.

I. <u>The History of the Debtor's Connections with the Florida Property</u>

The Florida Property is about 4.76 acres, improved by a home, a shed and two pump houses. Debtor's mother and step-father bought the Florida Property in the 1960's. Debtor lived with his family at the Florida Property from the 1960's until some time during the 1970's. Debtor testified at his deposition that he lived at the Florida Property for "a couple years in there in the '80's." He further testified that he lived at the Florida Property for a period of months in the early 1990's. From 1994 to 2000, the Debtor lived at two different locations in Orlando, Florida with his wife and son. From 2000 through the date of his bankruptcy filing in 2012, the Debtor lived with his

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

wife and son in a rental property in Vallejo, California (the "Vallejo Property"). After his bankruptcy filing and divorce, the Debtor moved to a different rental property in Vallejo, California.

The last time the Debtor visited the Florida Property was for a period of about three weeks in April 2008 after his mother passed away, when he stayed at the Florida Property with his sister and "some relatives." During that time, his wife and son remained at the Vallejo Property.

The Debtor inherited an undivided one-third interest in the Florida Property from his mother. There is no evidence in the record that Debtor has paid any utility bills or insurance for the Florida Property. The Debtor did testify that he had paid to reroof the residence on the Florida Property and shared in the payment of real property taxes.

On January 10, 2012, in Vallejo, California, the Debtor signed a Homestead Declaration ("Homestead Declaration") with respect to the Florida Property that was recorded in Florida on January 17, 2012. In the Homestead Declaration, the Debtor stated, based on his personal knowledge before a notary public, that: "The above declared homestead is my principal dwelling." He further stated that: "I am currently residing on that declared homestead." Id. Both statements were patently untrue.[3]

_____

[3] In his deposition, the Debtor stated that he talked about signing the Homestead Declaration with his siblings in November 2011. However, under the circumstances of this case, a reasonable assumption can be made that the signing and recording of the Homestead Declaration was part of the Debtor's

(continued...)

-3-

## II.  Bankruptcy Proceedings

The Debtor filed his chapter 7 bankruptcy petition on February 13, 2012.  The Trustee is the duly appointed trustee in the Debtor's chapter 7 case.  In the petition, the Debtor gave his address as the Vallejo Property.  In his Schedule A, he included his one-third interest in the Florida Property valued at $45,000.  In his Schedule C, the Debtor claimed an exemption for his interest in the Florida Property for a value of $55,000 under C.C.P. § 704.910.  He did not identify any personal property that he owned at the Florida Property on his Schedule B, and he did not claim an exemption in any such property on his Schedule C.  In his Statement of Financial Affairs, in response to Item #15, the Debtor indicated that he had not resided in any property other than the Vallejo Property during the three years preceding his bankruptcy filing.

In the early stages of his chapter 7 case, the Debtor amended his claimed exemptions on Schedule C twice.  In his first amended Schedule C ("First Amendment"), filed on April 11, 2012, he claimed an exemption in his interest in the Florida Property under C.C.P. § 704.910 and Article X, § 4 of the Florida Constitution.  In his second amended Schedule C ("Second Amendment"), filed on May 11, 2012, he returned to his original position and claimed an exemption in his interest in the Florida

³(...continued)
prebankruptcy planning, as at the upper left-hand corner of the Homestead Declaration, the recording officer is directed to mail the Homestead Declaration after recording to Albert Kun, Esq., 381 Bush Street, #200, San Francisco, CA 94104, the Debtor's bankruptcy counsel.

-4-

Property under C.C.P. § 704.910 only.

In the meantime, on April 18, 2012, the Trustee objected ("First Objection") to the Debtor's exemption claim for his interest in the Florida Property, arguing that the Debtor's Homestead Declaration was invalid because the Debtor did not reside on the Florida Property when the Homestead Declaration was recorded.

On May 21, 2012, the bankruptcy court heard argument on the First Objection, which by then applied with respect to the Second Amendment. Following the hearing, the bankruptcy court sustained the First Objection because C.C.P. § 704.910 is a definitional section of the California Code of Civil Procedure that includes no provision for a "debtor to claim an exemption in any property." The bankruptcy court made clear that its decision was without prejudice, but it was up to the Debtor to claim an appropriate exemption under applicable law. The bankruptcy court also decided not to address the First Objection to the extent that it referenced Article X, § 4 of the Florida Constitution, as in light of the Second Amendment, "the debtor is no longer asserting the exemption claim under the Florida Constitution." The bankruptcy court's decision on the First Objection was documented by a minute order entered on May 21, 2012. That order was not appealed.

On May 30, 2012, the Debtor amended his Schedule C a third time ("Third Amendment"), claiming an exemption in his interest

-5-

in the Florida Property under C.C.P. § 704.920.[4]  C.C.P. § 704.920 provides:

> A dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead pursuant to this article by recording a homestead declaration in the office of the county recorder of the county where the dwelling is located.  From and after the time of recording, the dwelling is a declared homestead for the purposes of this article.

On June 25, 2012, the Trustee objected ("Second Objection") to the homestead exemption claim set forth in the Third Amendment.  The Trustee argued that whether or not a homestead declaration was recorded, in order to have a valid homestead under California law, the Debtor had to reside on the subject property on the date of the declaration, and Debtor did not reside on the Florida Property when the Homestead Declaration was signed or recorded.  In addition, the Trustee argued that even if the Homestead Declaration had any validity independent of the fact that the Debtor did not live on the Florida Property, under California law, a homestead by declaration would only apply with respect to a voluntary sale and was ineffective with respect to the Trustee's involuntary hypothetical judgment lien sale of the Debtor's interest in the Florida Property as of the bankruptcy petition date, citing Kelley v. Locke (In re Kelley), 300 B.R. 11, 19-20 (9th Cir. BAP 2003).  Finally, the Trustee argued that Debtor's untrue statement in the Homestead Declaration that he currently was residing at the Florida Property demonstrated bad faith that should preclude allowance of the Debtor's homestead

_____

[4] The Debtor never claimed an exemption in any personal property at the Florida Property in any version of his Schedule C that he filed.

-6-

claim.

The Debtor responded that the Florida Property was his domicile, and his testimony was that the Florida Property was his family home, to which he intended to return with his son when his divorce was final. Debtor's response was supported by his Declaration.

The bankruptcy court heard the Second Objection on July 30, 2012 (the "Hearing"). During argument at the Hearing, the bankruptcy court confirmed its understanding that the property to which a valid claim of homestead would attach had to be the principal abode of the Debtor, and the Debtor did not reside at the Florida Property on the petition date or thereafter. The bankruptcy court further stated that it did not find the Debtor's statements credible that he intended to move back to the Florida Property to live. Ultimately, the bankruptcy court sustained the Second Objection. Its decision was memorialized in a minute order ("Minute Order") entered on July 30, 2012.

The Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

///
///
///
///
///

-7-

## ISSUE PRESENTED[5]

Did the bankruptcy court err in sustaining the Second Objection?

## STANDARDS OF REVIEW

We review issues of statutory interpretation and conclusions of law de novo. Ransom v. MBNA Am. Bank, N.A. (In re Ransom), 380 B.R. 799, 802 (9th Cir. BAP 2007), aff'd, 577 F.3d 1026 (9th Cir. 2009), aff'd, 131 S. Ct. 716 (2011).

We review a bankruptcy court's fact findings for clear error. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011). A finding of fact is clearly erroneous if the appellate tribunal, after reviewing the entire record, has a definite and firm conviction that a mistake has been made. Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007). If the bankruptcy court's view of the evidence is plausible in light of the record considered in its entirety, we may not reverse even if we are convinced that we might have made different findings. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985); Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo), 408 B.R. 280, 289 (9th Cir. BAP 2009). "When there are two permissible views of the evidence, the factfinder's choice

---

[5] In Appellant's Opening Brief at 5, the Debtor states seven separate issues, most of which can be distilled into the single issue stated above. We deal with two of Debtor's stated issues infra, one of which reflects a misunderstanding by the Debtor and his counsel of the bankruptcy court's perception of Ninth Circuit authority and one of which is waived.

between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. The bankruptcy court's credibility determinations further are entitled to heightened deference. See id. at 575.

In evaluating whether a bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested," and (2) if it did, whether the bankruptcy court's application of the appropriate legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION**

A. The Bankruptcy Court Did Not Ignore the Ninth Circuit's Decision in In re Arrol.

In his Opening Brief, Debtor's first argument is that the bankruptcy court abused its discretion by failing to follow the controlling Ninth Circuit authority of Arrol v. Broach (In re Arrol), 170 F.3d 934 (9th Cir. 1999). In Arrol, the debtor, Mr. Arrol ("Arrol"), owned a home in Michigan (the "Residence"). He experienced financial problems that ultimately resulted in his filing for bankruptcy protection under chapter 7. However, a bankruptcy filing presented a problem for Arrol in that he valued the Residence at $75,000, and the Michigan homestead exemption was only $3,500. Arrol solved that problem by moving temporarily to California, which had a $75,000 homestead exemption, in October 1994. He moved back to the Residence in Michigan in November 1996 and continued to reside there at all times relevant

to his bankruptcy case and the appeals that led to the Ninth Circuit's decision. Arrol filed his bankruptcy petition on January 9, 1997, claiming a $75,000 California homestead exemption in the Residence. In re Arrol, 170 F.3d at 935.

The trustee objected, arguing that under the Bankruptcy Code and California conflict of law principles, Arrol could claim no more than the $3,500 Michigan homestead exemption in the Residence. The bankruptcy court overruled the trustee's objection to Arrol's California homestead exemption claim, and its decision was affirmed by the district court and ultimately, by the Ninth Circuit. Id.

Two holdings of the Ninth Circuit in Arrol are relevant to this appeal: The Ninth Circuit interpreted § 522(b)(2)(A), which at the time of the Arrol decision provided in relevant part that a debtor could claim as exempt,

> any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place . . . .

Id. The Ninth Circuit first concluded that "[t]he plain language of section 522(b)(2)(A) points us to the state's exemption laws, not to its conflict of laws rules." The specific language of the statute allowed exemptions to be claimed under state laws applicable on the filing date. Since Arrol was domiciled in California for a longer portion of the 180 days preceding his bankruptcy filing than in Michigan, California homestead exemption law applied. Id. at 935-36.

Second, the Ninth Circuit held that since the California

-10-

homestead exemption law did not limit its application to homes within California, Arrol could properly claim his California homestead exemption as to the Residence in Michigan. <u>Id.</u> at 936-37.

Debtor argues that the bankruptcy court erred in this case in not applying <u>Arrol</u>. Appellant's Opening Brief at 7. However, in deciding the Second Objection, the bankruptcy court was fully cognizant of the <u>Arrol</u> decision. In fact, in the Minute Order, the bankruptcy court stated:

> The Ninth Circuit has determined that this California homestead statute is not limited in its application to California property. It may be claimed in a residence located outside of California. See In re Arrol, 170 F.3d 935 (9th Cir. 1999).

In addition, during colloquy at the Hearing, the bankruptcy court stated its awareness that exemption statutes are "supposed to be interpreted liberally in favor of the debtor." The bankruptcy court simply disagreed that the Debtor's circumstances tracked closely enough with Arrol's to mandate direct application of the second <u>Arrol</u> holding in this case.

Based on the record in this appeal, we conclude that the bankruptcy court did not abuse its discretion by applying an incorrect legal standard. The real dispute focuses on Debtor's arguments that the bankruptcy court clearly erred in its fact findings, which we discuss in Section C <u>infra</u>.

B. <u>Debtor Raises No Issue As To the Bankruptcy Court's Interpretation of California Homestead Exemption Law</u>.

California has opted out of the exemption scheme provided for in the Bankruptcy Code; so, in this California bankruptcy case, California exemption law applies. <u>Orange County's Credit</u>

Union v. Garcia (In re Garcia), 2013 WL 791544 (9th Cir. March 5, 2013).

As noted above, in the Third Amendment, the Debtor claimed an exemption in his interest in the Florida Property under C.C.P. § 704.920. In the Minute Order, after quoting C.C.P. § 704.920, the bankruptcy court discussed its interpretation as follows:

> "The Article 5 exemption requires that a party record a declaration stating that the residence is the 'principal dwelling' of the declarant or his or her spouse." Kelley v. Locke (In re Kelley), 300 B.R. 11, 17-18 (B.A.P. 9th Cir. 2003) (citing [C.C.P.] § 704.930(a)(3)).

> "Pursuant to California law, the factors a court should consider in determining residency for homestead purposes are physical occupancy of the property and the intention with which the property is occupied." Kelley at 21 (citing Ellsworth v. Marshall, 196 Cal. App. 2d 471, 474 (1961)).

> "The Ninth Circuit Court of Appeals has determined that a debtor is not automatically entitled to the protections provided in the Article 4 automatic homestead exemption [C.C.P.] §§ 704.710 et al. upon showing a valid declaration of homestead under Article 5 [C.C.P.] §§ 704.910 et al. Understanding this distinction is imperative, as the Article 4 exemption protections are applicable in a forced sale context (as here, where Debtor has filed his bankruptcy petition) whereas the Article 5 protections only apply in voluntary sales."

> "In the context of bankruptcy . . . Debtor's declaration of homestead helps him not at all, as the additional benefits conferred in Article 5 would benefit him only in the situation of a voluntary sale." Kelley at 19, 21 (citing Redwood Empire Prod. Credit Ass'n v. Anderson (In re Anderson), 824 F.2d 754, 757–59 (9th Cir. 1987)).

Minute Order.

Nowhere in Appellant's Opening Brief, either in the Statement of Issues presented on Appeal or anywhere in the Argument, does Debtor contest the bankruptcy court's interpretation of California exemption law. Accordingly, any

-12-

such issues are waived. <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001) (issues not specifically and distinctly raised and argued in opening brief are waived).

As noted in the Minute Order, the exemption provided by the recording of a declaration of homestead, the only exemption claimed in the Third Amendment, gives the Debtor no protection at all in this bankruptcy proceeding. The declaration of homestead, a C.C.P. Article 5 exemption, only exempts an interest in property in a voluntary sale context. <u>In re Kelley</u>, 300 B.R. at 19, 21. In a forced sale situation, as bankruptcy is interpreted, only C.C.P. Article 4 exemptions apply, in this instance, the automatic exemption of C.C.P. § 704.710, et seq. Since the Debtor never claimed the Florida Property as exempt under C.C.P. § 704.710, he arguably has no relevant exemption claim at all, and the bankruptcy court's ruling could be affirmed on this alternative ground.

<u>In re Kelley</u> is a published opinion of this Panel that has not been overruled. We follow the rule that absent a change in the law, we are bound by our prior precedential opinions. <u>See, e.g.</u>, <u>Gaughan v. The Edward Dittlof Revocable Trust (In re Costas)</u>, 346 B.R. 198, 201 (9th Cir. BAP 2006); <u>Ball v. Payco-Gen'l Am. Credits, Inc. (In re Ball)</u>, 185 B.R. 595, 597 (9th Cir. BAP 1995). In this appeal, we follow the conclusion of the Panel in <u>In re Kelley</u>, 300 B.R. at 21, as did the bankruptcy court, that under California law, the primary factors a bankruptcy court should consider in determining residency for homestead exemption purposes are physical occupancy of the claimed domicile and the

-13-

intent with which the property is occupied.

C. The Bankruptcy Court Did Not Clearly Err In Its Fact Findings.

Debtor argues from multiple angles that the bankruptcy court clearly erred in finding that the Debtor was not temporarily absent from the Florida Property and had no credible intent to return to live at the Florida Property. The Debtor does not (and cannot) contend that he actually occupied the Florida Property as his residence on the date that his Homestead Declaration was recorded or on the petition date or thereafter. "Whether or not [Debtor] actually or physically resided on the [Florida Property] at the time he filed his bankruptcy petition is not significant." Appellant's Opening Brief at 10. Debtor does argue that the Florida Property was his domicile, his family home, his "stomping grounds," to which he planned to return with his son when his divorce was finalized, based on his statements in his deposition and in his declaration filed in opposition to the Second Objection.

The bankruptcy court was aware of those statements and addressed them at the Hearing. "I know the words came out of his mouth. I don't believe it." The bankruptcy court's findings that the Debtor was not temporarily absent from the Florida Property and did not intend to live there were based on the following evidence in the record.

From the Debtor's own testimony, he had not resided at the Florida Property from 1994 forward. When last he lived in Florida, between 1994 and 2000, he had lived with his family in Orlando, and from 2000 through the date of his bankruptcy filing,

-14-

he and his family had lived at the Vallejo Property. Subsequent to his bankruptcy filing, the Debtor had moved, but he was still living in Vallejo. The last time he even visited the Florida Property was for a period of three weeks in 2008 after his mother's death. During that time, his wife and son remained at the Vallejo Property. In his Statement of Financial Affairs, the Debtor confirmed under penalty of perjury that he had not resided anywhere other than the Vallejo Property during the three years preceding his bankruptcy filing. The Debtor testified at his deposition that his brother currently was occupying the residence on the Florida Property; so, it was not even vacant for him to reoccupy.

In addition, the Debtor had called his own credibility into question by declaring before a notary public in the Homestead Declaration 1) that the Florida Property was his principal dwelling, and 2) that he currently was residing on the Florida Property, both of which statements clearly were not true. As argued by the Trustee in the Second Objection, those express misrepresentations raise real "concerns about the Debtor's veracity in this matter."

In light of the foregoing evidence that was before the bankruptcy court when it decided to sustain the Second Objection, we cannot find that the bankruptcy court clearly erred in determining that the Debtor did not reside on the Florida Property at the time of his bankruptcy filing and had no credible intent to return to the Florida Property to reside there in the future. "When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly

-15-

erroneous."  Anderson, 470 U.S. at 574.

D.  The Debtor Waived Any Argument That His Interest In the Florida Property Is Exempt Under the Florida Constitution.

As noted by the bankruptcy court in deciding the First Objection, although the Debtor claimed an exemption in his interest in the Florida Property under Article X, § 4 of the Florida Constitution in the First Amendment, he abandoned that exemption claim in the Second Amendment.  He did not renew it in the Third Amendment.  He further did not argue it in his opposition to the Trustee's Second Objection and did not raise it as an issue at the Hearing.  An argument that was not raised before the trial court generally is deemed waived for purposes of appeal.  "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so."  El Paso v. America West Airlines, Inc. (In re America West Airlines, Inc.), 217 F.3d 1161, 1165 (9th Cir. 2000).

The Debtor argues, particularly in his Reply Brief, that even if the application of Florida Constitution Article X, § 4 was not raised before the bankruptcy court, we should consider it as a matter of discretion because "[t]he issue raised here is constitutional and constitutional issues can be raised any time, even for the first time on appeal."  Appellant's Reply Brief at 3.  However, the issue does not arise under the United States Constitution, it relates to a provision of the Florida Constitution, and it is here where the first holding in In re Arrol is particularly relevant.

As discussed above, the Ninth Circuit held in Arrol that

-16-

under § 522(b)(2)(A), exemption claims may be made under the particular state laws applicable on the filing date. Section 522(b) has been amended substantially subsequent to the decision in <u>Arrol</u>. Under the currently effective version of § 522(b)(3)(A), applicable exemption laws are those of the state or locality where "the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition . . . ." The uncontroverted evidence before the bankruptcy court was that the Debtor resided at the Vallejo Property for the entire 730 days preceding his bankruptcy filing. In light of the record before us in this appeal, and consistent with the bankruptcy court's findings based on that record, we conclude that the applicable exemption laws in this case, as in <u>Arrol</u>, are the exemption laws of California. Consequently, Florida exemption law, whether constitutional or statutory, is not applicable, and we will not consider Debtor's argument with respect to Article X, § 4 of the Florida Constitution.

**CONCLUSION**

For the reasons discussed, we AFFIRM.